

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11    B.C.,

                      Plaintiff,

12          v.

13    G6 Hospitality Property LLC,

14                       Defendant.

15

CASE NO. 3:25-cv-05057-DGE

ORDER ON MOTION TO DISMISS
(DKT. NO. 11)

16                    **I**      **INTRODUCTION**

17          This matter comes before the Court on Defendant G6 Hospitality Property LLC's ("G6")

18    motion to dismiss (Dkt. No. 11) Plaintiff B.C.'s[1] amended complaint.  (Dkt. No. 5.)  The motion

19    to dismiss is GRANTED WITH LEAVE TO AMEND for the reasons discussed below.

20

21    _____

[1] Plaintiff has brought this complaint under a pseudonym.  The default rule in civil litigation,

22    embodied in Federal Rule of Civil Procedure 10(a), is that "[t]he title of the complaint must
name all the parties."  Nonetheless, in the Ninth Circuit, "we allow parties to use pseudonyms in

23    the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person
from harassment, injury, ridicule or personal embarrassment.'"  *Does I thru XXIII v. Advanced*

24    *Textile Corp.*, 214 F.3d 1058, 1067–1068 (9th Cir. 2000) (quoting *United States v. Doe,* 655 F.2d

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## II    BACKGROUND

### A.  Facts

Plaintiff claims she is a survivor of sex trafficking that occurred at a hotel in Tacoma, Washington, between 2017 and 2020.  (Dkt. No. 5 at 1.)  Plaintiff alleges Defendant G6 owned and operated the hotel—which was doing business as a Motel 6—during the period Plaintiff was trafficked.  (*Id*.)[2]

Plaintiff states her traffickers forced her to engage in sex with buyers at the hotel by violently beating her and instilling in her a profound fear of bodily injury and death if she did not comply with their demands.  (*Id*. at 5.)  Plaintiff claims her traffickers "advertised her online for

_____

920, 922 n. 1 (9th Cir. 1981)).  The decision to grant or deny permission to proceed anonymously is committed to the district court's discretion.  *Id*. at 1068.  In utilizing that discretion, district courts consider five factors: 1) the severity of the threatened harm; 2) the reasonableness of the anonymous party's fears; 3) the anonymous party's vulnerability to retaliation; 4) potential prejudice to the opposing party; and 5) the public interest.  *See id*. The severity of the threatened harm and reasonableness of the plaintiff's fears are the most important factors and may be analyzed together.  *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1043 (9th Cir. 2010).  In this case, considering the facts alleged, the Court concludes that the nondisclosure is necessary to protect Plaintiff from personal embarrassment, harassment, and injury should her name be publicly revealed. It finds Plaintiff's fears reasonable and concludes that there is no risk of prejudice to the opposing party. Defendants have not noted any objection to Plaintiff's proceeding under a pseudonym, as is typical in TVPRA litigation.

[2] Defendants state that "[a] different entity actually *operated* the hotel." (Dkt. No. 11 at 7 n.1) (emphasis added). This statement appears correct as there are several lawsuits in which G6 is identified as a franchisor and not a hotel operator.  *See Reed v. Barnes*, No. 3:24-CV-1500-D, 2025 WL 963072, *2 (N.D. Tex. Mar. 31, 2025) (G6 "is a hospitality company that owns and franchises the Motel 6 brand."); *B.J. v. G6 Hosp., LLC*, No. 22-CV-03765-MMC, 2023 WL 3569979, *1 n.5 (N.D. Cal. May 19, 2023) (G6 is a large hotel franchisor); *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 733 (E.D. Tex. 2024) (same); *Doe (T.M.) v. G6 Hosp. LLC*, No. 1:23-CV-2598-MLB, 2024 WL 4457563, *1 (N.D. Ga. Sept. 23, 2024) (same); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) (same); *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024) (same).  G6 is "one of the largest motel brands in the world."  *B.M. v. Wyndham Hotels & Resorts, Inc*., No. 20-CV-00656-BLF, 2020 WL 4368214, *1 (N.D. Cal. July 30, 2020).  For purposes of this motion, the Court accepts Plaintiff's factual allegations as true even though it may ultimately be found that G6 did not operate the hotel in question.

1    sex which was to occur at Defendant's hotel including on MegaPersonals.com, Tnaboard.com,

2    Listcrawlers.com, and EscortBabylon.net." (*Id*. at 6.)  "Defendant rented rooms to individuals it

3    knew or should have known were engaged in sex trafficking, and of Plaintiff in particular,"

4    Plaintiff alleges, because hotel staff observed a number of trafficking "red flags" at the hotel.

5    (*Id*. at 8.)  These red flags included: 1) constant foot traffic of sex buyers to victim's rooms; 2)

6    victims walking around the hotel and interacting with staff while drug or alcohol impaired and

7    with visible bruising, signs of malnourishment, and sexually explicit clothing; and 3) "suspicious

8    people and suspicious items including cash, drugs, drug paraphernalia, and condoms which was

9    observed by housekeeping staff or should have been so observed" by staff who cleaned the

10   rooms.  (*Id*. at 8–9.)  Plaintiff states that she interacted with Defendant's staff on a frequent basis,

11   and that they observed these "red flags."  (*Id*. at 9.)  "A continuous business relationship existed

12   between Defendant's hotel, its agents, employees and staff, and Plaintiff's traffickers' sex

13   trafficking business, in part, in that Defendant provided assistance, support, or facilitation to the

14   Plaintiff's traffickers by repeatedly rented rooms to individuals they knew or should have known

15   were involved in sex trafficking on the premises," Plaintiff states.  (*Id*. at 7.)  Plaintiff was a

16   minor until September of 2019.  (*Id*. at 2.)

17        Plaintiff's central claim is that:

18        Defendant's failure, by its agents, servants, staff, and employees, to timely and properly
          prevent the sex trafficking or timely intervene regarding same was a proximate and
19        competent cause and substantial factor in causing Plaintiff's severe injuries in this case
          including, but not limited to, being the victim of sex trafficking when at this subject hotel
20        and suffering personal injury and the trauma physically and mentally of being induced to
          engage in commercial sex with multiple sex buyers per day, while being trafficked, and
21        while simultaneously being under fear of severe harm or death if she did not comply as
          well as all residual injuries suffered by PTSD.

22
23   (*Id*. at 10.)  Thus, "[a]s a direct and proximate result of Defendant's involvement and multiple

24   failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-

trafficking efforts at its hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's hotel in violation of the [Trafficking Victims Protection Reauthorization Act ("TVPRA")]," Plaintiff alleges.  (*Id*. at 11.)  *See* 18 U.S.C. § 1595. Therefore, Plaintiff seeks to hold Defendant liable under the TVPRA's civil remedy for persons who "knowingly benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]."  18 U.S.C. § 1595(a).  (Dkt. No. 5 at 3.)

**B.  Procedural History**

Plaintiff filed her first amended complaint on March 3, 2025.  (Dkt. No. 5.)  Defendant swiftly responded with a motion to dismiss (Dkt. No. 11) for failure to state a claim under Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  Defendant argues that Plaintiff has failed to establish Defendant's knowledge of Plaintiff's trafficking at the hotel or Defendant's participation in a venture that trafficked her.  (Dkt. No. 11 at 6); *see* 18 U.S.C. § 1595(a).  Defendant points out that Plaintiff "does not recount any particular instance where staff saw signs of abuse"; does not "explain how staff could have connected [the alleged red flags] to trafficking" rather than commercial sex work; and emphasizes "Plaintiff does not describe a single specific interaction with hotel staff within the scope of their employment."  (Dkt. No. 11 at 10.)  The complaint does little to establish "G6's actual or constructive knowledge of Plaintiff's trafficking," beyond detailing the red flags that were observed by staff, Defendant continues.  (*Id*. at 9.)  For example, Plaintiff does not allege that "Defendant knew about the[] purported advertisements" listed online for sex at the hotel.  (*Id*. at 17.)  Likewise, she does not allege that the staff asked for her age or otherwise "knew or should have known she was underage."  (*Id*. at 18.)  Accordingly,

1    Defendant argues that Plaintiff's allegations are too vague and conclusory to state a claim for

2    relief under the TVPRA.

3        Plaintiff filed a response (Dkt. No. 15) to which Defendant replied (Dkt. No. 16).  The

4    matter is now ripe for disposition.

5                    **III      LEGAL STANDARD**

6        Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack

7    of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

8    theory.  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).  Material

9    allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston*

10   *v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6)

11   motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

12   the grounds of his entitlement to relief requires more than labels and conclusions, and a

13   formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.*

14   *Twombly*, 550 U.S. 544, 554–55 (2007) (internal citations omitted).  "Factual allegations must be

15   enough to raise a right to relief above the speculative level, on the assumption that all the

16   allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555.  The complaint must

17   allege "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 547.  "The court

18   need not, however, accept as true allegations that contradict matters properly subject to judicial

19   notice or by exhibit . . . .  Nor is the court required to accept as true allegations that are merely

20   conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden*

21   *State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187

22   (9th Cir. 2001).

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## IV     DISCUSSION

### A.  Liability Under the TVPRA

The Victims of Trafficking and Violence Protection Act ("TVPA"), passed in 2000, created a criminal offense for the trafficking of adults and children.  *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707, *3 (N.D. Cal. Oct. 28, 2020).  In 2003, Congress passed the TVPRA and added a civil right of action that allows victims of trafficking to recover against their traffickers.  *See* 18. U.S.C. § 1595(a).  Congress amended the statute once again in 2008, creating a cause of action against those who *facilitate* such trafficking ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator **(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)** in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added); *Ditullio v. Boehm*, 662 F.3d 1091, 1094 n.1 (9th Cir. 2011).  "Section 1595 'opened the door for liability against facilitators who did not directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture.'"  *J.C.,* 2020 WL 6318707, at *3 (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).

To prevail on a theory of beneficiary liability under the TVPRA, a plaintiff must allege that the defendant "(1) knowingly benefitted, (2) from participation in a venture [ ], (3) which they knew or should have known was engaged in conduct that violated the TVPRA."  *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022); *B.J.*, 2023 WL 6120682, at *3.  A plaintiff may successfully plead these elements in two distinct ways.  *B.J.,* 2023 WL 6120682, at *3.  First, the plaintiff may allege that the defendant's *own* acts, omissions, and state of mind establish each element.  This is known as direct beneficiary liability.  Alternatively, a plaintiff

may advance an agency theory that imputes the acts, omissions, and state of mind of an agent to the defendant; this is known as indirect beneficiary liability. *See id.* at *3; *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F.Supp.3d 921, 935 (D. Ore. Sept. 8, 2020) (distinguishing direct and indirect beneficiary liability theories under the TVPRA); *B.M.*., 2020 WL 4368214, at *4; (same); *Doe (K.E.C.*, 750 F. Supp. 3d at 732 (E.D. Tex. 2024) ("Indirect liability is a separate consideration from beneficiary liability under the TVPRA, which is a form of direct liability"); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020) (distinguishing direct and indirect beneficiary liability theories under the TVPRA); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19CV120, 2020 WL 9550005, *3 n.1 (E.D. Va. Sept. 21, 2020) ("beneficiary liability is not third-party liability. Rather, it is another form of direct liability. Those who knowingly benefit from participating in a venture that they knew or should have known was sex trafficking are themselves directly liability for the harms caused to the victims. Whether a third party—such as an employer or parent company—can be held indirectly liabil[e] for the beneficiary's tortious conduct is a separate question[.]").

Courts agree that it is "generally more difficult" for a plaintiff to bring a direct beneficiary claim against a parent company, corporate affiliate, or franchisor of a hotel—as opposed to the local hotel—because such corporations are typically one or multiple steps removed from the local hotel and its staff. *Doe (K.E.C.),* 750 F.Supp.3d at 734; *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 562 (7th Cir. 2023). Therefore, courts require plaintiffs to "connect the dots" between the alleged trafficking and the franchisor or parent company when pursuing a direct beneficiary claim. *Doe (K.E.C.),* 750 F. Supp. 3d 719, at 734 (citing *J.M. v.*

1    *Choice Hotels Int'l, Inc.*, No. 2:22-CV-00672-KJM-JDP, 2023 WL 3456619 (E.D. Cal. May 15,

2    2023)); *B.M.*, 2020 WL 4368214, at *5.[3]

3        As for indirect liability, courts in the Ninth Circuit apply federal common law agency

4    principles under the TVPRA.  *J.M.*, 2023 WL 3456619, at *5.  "An actual agency relationship

5    requires (1) a manifestation by the principal that the agent shall act for him; (2) that the agent has

6    accepted the undertaking; and (3) that there is an understanding between the parties that the

7    principal is to be in control of the undertaking."  *B.J.*, 2023 WL 6120682, at *9 (internal

8    quotations omitted).  Courts have found allegations in a complaint sufficient to show an agency

9    relationship where the plaintiff "allege[d] defendants exercised control over the day-to-day

10    operations of the hotels by hosting online bookings, setting hotel employee wages, making

11    employment decisions for the hotels, providing standardized training methods for hotel

12

13

---

14    [3] Courts have concluded that, "[i]n order to sufficiently 'connect the dots,' a plaintiff must allege
      facts that link the franchisors to the traffickers through the franchisors' oversight of the

15    franchisees and hotel operations."  *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-CV-04895-
      SVW-MAR, 2025 WL 1119736, *4 (C.D. Cal. Mar. 5, 2025) (collecting cases); *J.M.,* 2023 WL

16    3456619 at *5 (collecting cases).  Allegations that a franchisor observed signs of trafficking
      through an inspection are typically insufficient; likewise, courts have dismissed complaints

17    alleging general knowledge of commercial sex activity or that argue a franchisor did not fight
      hard enough to prevent trafficking.  *See, e.g.*, *A.B.*, 484 F. Supp. 3d 921, 938; *E.S. v. Best W.*

18    *Int'l, Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021); *A.D. v. Choice Hotels Int'l, Inc.*, No.
      2:22-cv-648, 2023 WL 3004547 (M.D. Fla. Apr. 19, 2023); *A.D. v. Wyndham, Hotels & Resorts,*

19    *Inc.*, No. 4:19-cv-120, 2020 WL 8674205, at *4 (E.D. Va. July 22, 2020).  Indeed, the TVPRA
      does not require franchisors to affirmatively stop or monitor trafficking.  *B.M.,* 2020 WL

20    4368214, at *7. In contrast, factual allegations that show a franchisor or parent company retained
      day to day control over room rentals, exercised substantial oversight over hotel operations,

21    collected data about all hotel guests, controlled all housekeeping policies, and had policies in
      place that required staff to report indicia of trafficking have been found sufficient to state a claim

22    for direct beneficiary liability.  *See Doe*, 2025 WL 1119736, at *4; *see also Doe (K.E.C.)*, 2024
      WL 4501095, at *9–10; *G.J.,* 2023 WL 6120682, at *8; *T.P. v. Wyndham Hotels & Resorts, Inc.*,

23    No. 2:21-CV-04933, 2022 WL 17363234, at *11 (S.D. Ohio Dec. 1, 2022); *Doe (A.R.J.) v.*
      *Wyndham Hotels & Resorts, Inc.*, No. 1:24-cv-00109-DAE, 2024 WL 4224915, at *5 (W.D. Tex.

24    Aug. 30, 2024).

1  employees, and fixing hotel room rent prices." *J.M.,* 2023 WL 3456619, at *5 (citing cases that

2  found the same).

3       **B.  Plaintiff's Beneficiary Liability Claim**

4       To state a claim under a section 1595(a) beneficiary theory, [the plaintiff] must allege

5  facts from which it can reasonably [be] inferred that [the defendants] (1) knowingly benefitted

6  financially or by receiving anything of value; (2) from participation in a venture; (3) they knew

7  or should have known has engaged in sex trafficking." *J.C.,* 2020 WL 6318707, at *4 (internal

8  citations and quotations omitted).

9       1.  Knowingly benefit

10      Plaintiff alleges that Defendants received financial benefit from Plaintiff's traffickers

11  room rentals. (Dkt. No. 5 at 7.)  Defendants argue that the statute requires their actual knowledge

12  of benefitting from participation in trafficking.  (Dkt. No. 11 at 19–20). However—as courts in

13  this circuit have consistently found—that statutory interpretation would render the "should have

14  known" language in § 1595 superfluous.  *J.C. v. Choice Hotels Int'l, Inc*., No. 20-CV-00155-

15  WHO, 2020 WL 3035794, *1 n. 1 (N.D. Cal. June 5, 2020) (applying 'participation in a venture'

16  definition from criminal liability section of TVPRA to civil liability section of TVPRA, "would

17  void the 'should have known' language in the civil remedy" and "[t]his violates the 'cardinal

18  principle of statutory construction that a statute ought, upon the whole, to be construed so that, if

19  it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.");

20  *B.M.,* 2020 WL 4368214, at *4 ("this "interpretation of the statute reads a requirement for 'actual

21  knowledge' of criminal sex trafficking into the civil statute, reading out the 'should have known'

22  language").  Thus, this element "'merely requires that Defendant knowingly receive a financial

23  benefit' and the rental of a room (or [defendants'] receipt of royalties for that rental) constitutes a

24

financial benefit from a relationship with the trafficker sufficient to meet this element." *B.M.*, 2020 WL 4368214, at *4 (quoting *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, *2 (S.D. Ohio Dec. 6, 2019)); *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-CV-06038-TMC, 2024 WL 3276417, *9 (W.D. Wash. July 2, 2024). Plaintiff therefore satisfies this element of the test.

> 2. Participation in a venture Defendants knew or should have known has engaged in sex trafficking

"The phrase 'participation in a venture' requires a plaintiff to allege that the defendant took part in a common undertaking or enterprise involving risk and potential profit." *A.B.*, 746 F.Supp.3d at 1006 (cleaned up). "[T]here are two ways in which a plaintiff can connect the dots between the plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit for purpose of pleading the second prong of a TVPRA claim: by alleging a direct association between the defendant hotel and the plaintiff's trafficker, or by showing a continuous business relationship between a defendant hotel and a sex trafficker where the defendant rented rooms to people it knew or should have known were engaged in sex trafficking." *B.J.,* 2023 WL 6120682, at *4 (citation omitted). In this way, "[t]he third prong of a direct beneficiary liability claim overlaps substantially with the second, in that it requires the plaintiff to assert facts supporting the defendant's knowledge of the venture in which it allegedly participated, i.e., that the defendant 'rented rooms to people [it] knew or should have known were engaged in sex trafficking.'" *Id.* (citing *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, *5 (N.D. Cal. May 19, 2023)).

First, interpreting the complaint to allege a direct beneficiary liability theory, Plaintiff does not plausibly allege that Defendants knew or should have known about her alleged trafficking at the Tacoma Motel 6. Plaintiff claims that she "interacted with Defendant's staff on

a frequent basis, and Defendant's staff witnessed and observed Plaintiff, her traffickers as well as

a frequent procession of sex buyers going in and out of the subject rented rooms,

contemporaneous with other signs and indicators of trafficking occurring on the subject

premises." (Dkt. No. 5 at 9.)  These allegations are conclusory; as this Court has remarked

before, "[c]onclusory statements that certain things are 'obvious signs of sex trafficking' do not

satisfy the pleading standard." *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023

WL 5951390, *6 (W.D. Wash. Sept. 13, 2023).  Instead, the complaint must plausibly put forth

facts indicating that the staff should have known *sex trafficking*—not commercial sex work—of

the *specific plaintiff* in question was occurring.  *Id*.  Plaintiff claims she would "interact" with

staff while visibly bruised and in sexually explicit clothing, but the complaint fails to identify or

describe any specific interactions with hotel staff or instances where the staff witnessed violence

or coercion.  (Dkt. No. 5 at 9.)  In contrast, courts have upheld TVPRA claims that plead non-

conclusory allegations of violence and connect the knowledge of the staff to the Defendant.  *See*

*T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 WL 17363234, at *8 (S.D.

Ohio Dec. 1, 2022) (plaintiff alleged visible injuries and that her trafficker openly beat her in

front of hotel staff, some of whom participated in sex acts with her); *K.B. v. Inter-Continental*

*Hotels Corp.*, No. 19-cv-1213, 2020 WL 8674188, at *5–6 (D.N.H. Sept. 28, 2020) (plaintiff

alleged extensive visible injuries, and a severe act of violence by trafficker against victim caused

damage to furniture, which hotel noticed); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.

Supp. 3d 959, 967 (S.D. Ohio 2019) (allegation that hotel staff ignored "desperate pleas and

screams for help" and defendant's open violence against victim); *J.G. v. Northbrook Indus., Inc.*,

619 F. Supp. 3d 1228, 1238–39 (N.D. Ga. 2022) (visible injuries and physical "deterioration,"

and that hotel staff " acted as lookouts"); *J.M. v. Choice Hotels Int'l, Inc*, No. 2:22-cv-00672-

1   KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (hotel staff rented rooms to

2   trafficker "away from other guests" and instructed johns to hurry up as they entered and left her

3   room); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913, at *2 (N.D.

4   Ga. Aug. 30, 2023) (hotel employees zip-tied the strike bar of a door to prevent locking so that

5   commercial sex purchasers could enter and exit); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir.

6   2017) (hotel operator and trafficker exchanged high fives and spoke of "getting this thing going

7   again").  Plaintiff's complaint pleads no specific facts about violence Plaintiff experienced

8   during her time in the hotel and no facts to connect the dots between G6 and the hotel staff.

9           Second, if the Complaint is construed to bring an indirect liability claim, Plaintiff does

10  not bring plausible allegations that an agency relationship existed.  Although the complaint

11  references "Defendant's failure, by its agents, servants, staff, and employees," (Dkt. No. 5 at 10),

12  this description is utterly conclusory.  The complaint does not set forth facts indicating G6 had

13  direct control over the day-to-day operations of the hotel such that it controlled the

14  instrumentality that caused the plaintiff's harm.  *C.f., J.M.*, 2023 WL 3456619, at *5; *B.J.*, 2023

15  WL 6120682, at *9; *B.M.*, 2020 WL 4368214, at *6–*7.  Although the complaint dubs G6 an

16  "operator," it is silent as to the frequency or degree to which Defendant communicated with the

17  staff or personally inspected the property.  The two words "agent" and "operator" alone are

18  insufficient to satisfy the motion to dismiss standard, which requires facts in addition to

19  conclusory allegations.  *C.f. B.M.*, 2020 WL 4368214, at *6 (factual allegations sufficient to

20  plead an agency relationship); *A.B.*, 2020 WL 5371459, at *10 (factual allegations sufficient to

21  plead an agency relationship); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1258 (M.D. Fla.

22  2020) (factual allegations sufficient to plead an agency relationship.)

23

24

1    Accordingly, the Court concludes Plaintiff has not plead facts sufficient to give rise to a

2 plausible TVPRA claim against Defendant.

3                                     **V      CONCLUSION**

4    Accordingly, Defendant's motion to dismiss (Dkt. No. 11) is GRANTED WITH LEAVE

5 TO AMEND.  Any amended complaint shall be filed within 60 days of the date of this order.

6

7    Dated this 3rd day of July, 2025.

8

9

10                                    David G. Estudillo
                                      United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24